STATE OF NORTH CAROLINA v. ROGER DALE SUMMEY

No. 9127SC1057

(Filed 6 April 1993)

1. **Evidence and Witnesses §§ 441, 460, 501 (NCI4th) — robbery, rape, kidnapping — identification — stray mark on photograph — observation at probable cause hearing — viewing while in custody — in court identification not tainted**

The trial court did not err in a prosecution for robbery, rape, and kidnapping by denying defendant's motion to suppress identification testimony from Ms. Hannah and Little, the victims, where Ms. Hannah became a dispatcher and clerk for the Sheriff's Department after the incident; she saw defendant as he was being brought into the sheriff's office and had access to booking cards; Ms. Hannah and Little saw defendant seated at the defense table during the probable cause hearing; a picture of defendant shown to Ms. Hannah and Little in a photographic array four days after the incident had an unexplainable ink mark on its plastic cover which the other pictures in the array did not have; and the trial judge determined that the ink mark on the plastic covering the photograph was merely an idle scratch and was not suggestive, that the observation of defendant at the defense table during the probable cause hearing was not impermissibly suggestive, and that the

STATE v. SUMMEY

[109 N.C. App. 518 (1993)]

viewing of defendant by Ms. Hannah at the jail where she worked was harmless because of previous identifications. Under the totality of circumstances, the pretrial identification procedures were not so impermissibly suggestive as to give rise to a substantial likelihood of mistaken identification. Both witnesses had ample opportunity to view defendant for several minutes; each of them demonstrated attentiveness to his physical characteristics; each of their prior descriptions of defendant was accurate and conformed to each other's testimony; each demonstrated certainty at all times in identifying defendant's photograph and person; and the length of time between the crime and the confrontation was relatively brief, there being only four days between the crime and the photographic array.

Am Jur 2d, Criminal Law §§ 802, 974; Evidence §§ 371-373.

2. Criminal Law § 687 (NCI4th) — instructions — identification testimony — requested instruction not given

The trial court properly instructed the jury on identification testimony in a prosecution for robbery, rape, and kidnapping where defendant requested an instruction on eyewitness testimony taken nearly verbatim from the 1986 Pattern Jury Instructions which included a list of factors for the jury to consider, the trial court declined the request, and the court gave instead the Pattern Jury Instruction on eyewitness identification as it was revised in 1989, which did not include the list of factors.

Am Jur 2d, Trial §§ 185-188.

3. Evidence and Witnesses § 2209 (NCI4th) — rape — semen testing inconclusive — testimony that defendant could not be excluded

The trial court did not err in a prosecution for robbery, kidnapping, and rape by allowing an expert in forensic serology to testify that tests on semen taken from the victim were inconclusive and that defendant could not be excluded. The expert had testified earlier that she had no opinion as to the identity of the person whose spermatozoa she found and defendant failed to demonstrate a reasonable possibility that the jury would have reached a different result at trial had the testimony been excluded.

Am Jur 2d, Expert and Opinion Evidence § 300.

Admissibility and weight of blood-grouping tests in disputed paternity cases. 43 ALR4th 579.

4. **Robbery § 4.3 (NCI3d)— armed robbery—pellet pistol and BB gun—armed robbery and common law robbery submitted— no error**

The trial court did not err by denying defendant's motion to dismiss charges of armed robbery where there was evidence that it appeared to the victims that the robbery was committed with dangerous weapons as well as evidence tending to show that the weapons in question were not dangerous weapons within the contemplation of N.C.G.S. § 14-87. It was for the jury to determine the nature of the weapon used, and the jury was given instructions as to both armed and common law robbery and a definition of "dangerous weapon" as "one which is likely to cause death or serious bodily injury."

**Am Jur 2d, Robbery §§ 6 et seq.**

Stationary object or attached fixture as deadly or dangerous weapon for purposes of statute aggravating offenses such as assault, robbery, or homicide. 8 ALR5th 775.

Appeal by defendant from judgments entered 15 July 1991 by Judge Marcus L. Johnson in Gaston County Superior Court. Heard in the Court of Appeals 13 January 1993.

Defendant was charged in proper bills of indictment with two counts of robbery with a dangerous weapon, three counts of first degree rape, and two counts of first degree kidnapping. At trial, the State's evidence tended to show the following pertinent facts: On the night of 28 July 1989, Joy Haney Hannah rode with Alfred Little, her friend and co-worker, in Little's automobile to Lineberger Park in Gastonia. Little parked his car in a parking lot by a swimming pool where he and Ms. Hannah sat and talked.

Sometime thereafter, a black male appeared at the passenger window of Little's car holding a gun while two white males appeared on the driver's side of Little's car. One of the two white men was bearded, had long dark hair, and was also armed with a gun. The three men ordered Ms. Hannah and Little to get out of the car and lie on the ground. The men took money and jewelry from both Hannah and Little.

STATE v. SUMMEY

[109 N.C. App. 518 (1993)]

The bearded white male then took Ms. Hannah by the back of her shirt and forced her to walk with him to a building near the swimming pool on the park grounds. The bearded man then had sexual intercourse with Ms. Hannah twice. The black male then appeared at the building and had sexual intercourse with Ms. Hannah while the bearded white male pointed his gun at her. Subsequently, the third man alerted the two men with Ms. Hannah that he thought the police were coming, and all three men ran off.

After the three men left, Ms. Hannah ran to a nearby store where she telephoned the police. She was taken to a hospital and examined.

At a photographic array held four days later on 1 August 1989, both Ms. Hannah and Little identified defendant as the bearded white male assailant. After hearing and denying defendant's motions to suppress the identification testimony the trial court permitted, both Ms. Hannah and Little identified defendant in court as the bearded white male involved in the 28 July 1989 incident.

State Bureau of Investigation forensic serologist Lucy Milks testified that her attempts to apply blood grouping analysis to determine the origin of spermatozoa taken from Ms. Hannah's body and underwear were "inconclusive."

George Turner testified that he had gone with defendant and three other men to Lineberger Park on the night of 28 July 1989 and later saw defendant and a black man holding guns at people in a car. Turner also testified that he saw defendant in the area of the building by the swimming pool and saw a girl lying beside the building tied up. Turner stated that defendant came to Turner's house later that evening with some jewelry which he hid under a board and also told Turner that he had "raped that girl down in the park." Turner also testified that the weapons which defendant and the black man had were a pellet pistol and a BB rifle with a broken stock.

At the close of the State's evidence, the trial court dismissed one count of rape and one count of kidnapping. The jury found defendant guilty of all remaining charges; however, the trial court allowed defendant's post-trial motion to reduce the first degree kidnapping conviction to second degree kidnapping. The trial court entered judgments sentencing him to two consecutive life sentences, a concurrent term of forty years for robbery with a dangerous

weapon, and thirty years for second degree kidnapping to run concurrently with the second life sentence. Defendant appealed.

*Attorney General Lacy H. Thornburg, by Associate Attorney General Sue Y. Little, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Mark D. Montgomery, for defendant-appellant.*

MARTIN, Judge.

Defendant contends that the trial court erred (1) by denying defendant's motions to suppress the identification testimony by the prosecuting witnesses, (2) by failing to give defendant's requested instruction on eyewitness identification testimony, (3) by allowing the SBI serologist to testify that she could not exclude defendant as the person who deposited semen in the sample taken from the prosecuting witness, and (4) by denying defendant's motion to dismiss the charges of armed robbery. We find no prejudicial error in defendant's trial.

[1] By his first and second assignments of error, defendant contends that the trial court committed reversible error in denying his motion to suppress the identification testimony of witnesses Ms. Hannah and Little as there was a substantial risk of misidentification of defendant. Specifically, defendant contends that the pre-trial identification procedures were impermissibly suggestive and tainted the in-court identification testimony because (1) defendant's picture included in a photographic array contained an ink mark, (2) both Ms. Hannah and Little observed defendant at the probable cause hearing, and (3) Ms. Hannah had an opportunity to view defendant while he was in custody, as well as his booking cards at the Sheriff's Department.

A court must exclude pre-trial identification evidence, as well as any in-court identification testimony derived therefrom, as violating due process where the facts reveal a pre-trial identification procedure so impermissibly suggestive that there is a substantial likelihood of irreparable misidentification. *State v. Pigott,* 320 N.C. 96, 357 S.E.2d 631 (1987); *State v. Harris,* 308 N.C. 159, 301 S.E.2d 91 (1983). Whether there is a substantial likelihood of misidentification depends upon a totality of the circumstances. *Id.* In such a review, the Court must consider:

(1) The opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation.

*Pigott,* at 99-100, 357 S.E.2d at 634.

When the facts found by the trial judge after *a voir dire* hearing on a motion to suppress identification testimony are supported by competent evidence, they are binding on the appellate courts. *State v. Freeman,* 313 N.C. 539, 330 S.E.2d 465 (1985). A determination by the trial judge that the identification testimony had an independent source must be clear and convincing. *Id.* at 544, 330 S.E.2d at 471. For a photographic lineup to be fair, the officers conducting it must do nothing to induce the witness to select one picture over another. *Id.* at 545, 330 S.E.2d at 471.

At *voir dire* hearing on defendant's motion to suppress the identification testimony, the evidence disclosed: Sometime after the incident of 28 July 1989, Ms. Hannah became a dispatcher and clerk for the Gaston County Sheriff's Department. During this time and before defendant's trial, she saw defendant a couple of times as he was brought into the sheriff's office. Ms. Hannah also had access to booking cards kept by the Sheriff's Department including several on defendant. She also testified that she had seen defendant seated at the defense table during the probable cause hearing and identified him at that time.

Ms. Hannah's initial description of her assailant was that he was white, fairly tall, and had long, shoulder-length dark brown hair and a bushy beard, two to three inches long. She has also described him as dirty, wearing blue jeans, a bandanna tied around his head, and having either rotten teeth or no front teeth. Ms. Hannah testified he had "a dark mouth and droopy eyes . . . kind of sunk-in eyes." She could not remember whether the assailant wore a shirt.

Additionally, Ms. Hannah testified as to the conditions surrounding her viewing of the perpetrator. There were lights on in the tennis court to the right of the parking lot, a street light to the left of the car and lights all the way around the pool house located beside the parking lot. Ms. Hannah was in the parking lot area approximately ten minutes during which time she observed

defendant. Although there were no lights on at the building where Ms. Hannah was later raped, the lights from the pool could still be seen, and she spent approximately fifteen minutes with the perpetrator at that building.

Little repeated his initial description of the assailant on *voir dire* as having long hair, a long beard, being skinny and ugly. Little stated the man wore jeans, no shirt and a brimmed "bush hat." Little testified that the lighting conditions were not optimum in the park at the time of the encounter but that he was able to make out the facial features of the perpetrators. Little also observed defendant at the probable cause hearing. Little observed Hannah's assailant for approximately forty-five seconds to a minute and testified that his in-court identification of defendant came from independently recalling seeing his face in Lineberger Park and not from the probable cause hearing or the photographic array.

Detective James Anderson testified on *voir dire* that a picture of defendant shown to Ms. Hannah and Little at a photographic array held four days after the incident and identified by both as their assailant had an unexplainable ink mark on its plastic cover which the other pictures shown to Ms. Hannah and Little did not. Anderson did not believe that the mark had been there at the time of the identification and had never noticed it before. Ms. Hannah took twelve seconds and Little fourteen seconds to identify the photograph of defendant as the perpetrator at the photographic array.

At the conclusion of the *voir dire* hearing, the trial court entered findings of fact and concluded that the evidence supported the findings that both Ms. Hannah and Little had ample opportunity to observe defendant at the time of the crimes and that the pre-trial identification procedures were not impermissibly suggestive.

The trial judge determined that the ink mark on the plastic covering over defendant's picture in the photographic array was not suggestive, but was merely an idle pen scratch and, in any event, was <u>not</u> an indicative mark. The trial judge found that the photographic array was not impermissibly suggestive. The trial judge also concluded that the fact that Ms. Hannah and Little observed defendant seated at the defense table during the probable cause hearing was not impermissibly suggestive. Finally, the court found that the pre-trial identification procedure was not impermissibly suggestive merely because Ms. Hannah had the opportuni-

ty to view defendant, as well as his booking cards, while he was in custody. The trial judge concluded that defendant could come into the view of a prosecuting witness anywhere and that because of Ms. Hannah's previous identifications through admissible photos and at the probable cause hearing, the viewing of defendant by Ms. Hannah at the jail where she worked was harmless and not prejudicial.

We find no error in the denial of defendant's motion and hold that under the totality of circumstances, the pre-trial identification procedures in this case were not so impermissibly suggestive as to give rise to a substantial likelihood of mistaken identification. Both witnesses had ample opportunity to view defendant for several minutes, each of them demonstrated attentiveness to his physical characteristics, each of their prior descriptions of defendant was accurate and conformed to each other's testimony, each demonstrated certainty at all times in identifying defendant's photograph and person, and the length of time between the crime and confrontation was relatively brief, there being only four days between the crime and the photographic array. While defendant points to several instances of conflicting testimony, such as the failure to observe defendant's tatoos and the type of headgear worn by the assailant, a witness does not have to be able to describe with perfect accuracy a person he observes in the process of committing a crime. *State v. Daniels*, 35 N.C. App. 85, 239 S.E.2d 880 (1978). Merely because defendant was the only bearded person in the courtroom at the time and because he was seated at the defense table is not on its face impermissibly suggestive. Our Supreme Court has specifically held that the viewing of a defendant in a courtroom during varying stages of a criminal proceeding is not in and of itself such a confrontation as will taint an in-court identification. *State v. Hannah*, 312 N.C. 286, 322 S.E.2d 148 (1984) (merely because the witness observed the defendant at the preliminary hearing seated at the defense table wearing prison clothes was not impermissibly suggestive). Nor does the fact that Ms. Hannah saw defendant, and his booking cards, in the course of her employment at the Sheriff's Department taint her identification. Our courts have held repeatedly that confrontations between a victim or witness and a suspect following a crime are not automatically so suggestive as to violate a defendant's constitutional rights. *State v. Thomas*, 292 N.C. 527, 234 S.E.2d 615 (1977); *State v. Jordan*, 49 N.C. App. 561, 272 S.E.2d 405 (1980). The findings of the trial court are supported by clear

and convincing competent evidence and are thereby binding on this Court. We find no error in the denial of defendant's motions to suppress the identification testimony of Little and Ms. Hannah.

[2] By defendant's next assignment of error, he contends that the trial court erred when it failed to give his requested jury instruction regarding eyewitness identification testimony. Defendant contends that because the instruction he requested was supported by the law and not given in substance, the trial court erred. We disagree.

Defendant submitted a written request for instructions on eyewitness identification testimony taken nearly verbatim from the 1986 North Carolina Pattern Jury Instructions. This requested instruction included a list of factors for the jury to consider in evaluating eyewitness testimony as to observations of the perpetrator before, at the time of and after the offense. The trial court declined the request and instead gave the Pattern Jury Instruction on eyewitness identification as it was revised in 1989. The instruction as given instructed the jury that the State had the burden of proving the identity of the defendant as the perpetrator of the crime beyond a reasonable doubt, but did not include the list of factors.

A trial court is not required to give a requested instruction in the exact language of the request, but where the request is correct in law and supported by the evidence in the case, the court must give the instruction in substance. *State v. Green*, 305 N.C. 463, 290 S.E.2d 625 (1982). In *Green*, the defendant requested an instruction similar to that requested in this case, and the trial court actually gave an instruction virtually identical to that given in the case *sub judice*. In response to defendant's assignment of error to the failure to grant the requested instruction, the Supreme Court held:

> We think the trial court here gave in substance that portion of the requested instruction which was correct in law. The instruction clearly emphasized the importance of proper identification of the defendant and emphasized that the burden of proving such identity beyond a reasonable doubt was on the State. Read contextually, the charge adequately explained to the jury the various factors they should consider in evaluating the testimony of witnesses. . . . no further instructions were necessary.

STATE v. SUMMEY

[109 N.C. App. 518 (1993)]

*Id.*, at 477, 290 S.E.2d at 633. We conclude that the trial court in this case properly instructed the jury with respect to the identification testimony.

[3] Defendant next assigns as error the admission of testimony by Agent Milks, an expert witness in the area of forensic serology, that she could not exclude defendant as the person who deposited the semen in a sample taken from Ms. Hannah. During the State's case the following exchange took place between the prosecutor and Milks:

Q. You said that—Agent Milks, you said that they [the serology tests] were inconclusive?

A. That's Correct.

Q. Well, what was it that—did you obtain anything from your analysis that was less than conclusive?

A. I detected the presence of spermatozoa, but I have no opinion as to who that originated from.

. . .

Q. And from your examination of the semen and the blood, you were unable to exclude the blood of [the defendant]—that was submitted for your analysis as the person who deposited the semen.

MR. MORRIS: OBJECTION.

Q. Is that correct?

THE COURT: OVERRULED.

A. That's correct. I cannot exclude him.

Defendant contends that Milks' testimony that she could not "exclude" defendant as the source of the semen was not helpful to the jury and was prejudicially worded to give the impression that Milks believed that defendant was the donor of the semen, but could not establish that fact through use of the serology tests.

A trial court's ruling on an evidentiary point is presumed to be correct. *State v. Herring*, 322 N.C. 733, 370 S.E.2d 363 (1988). Whether a judge's actions amount to reversible error is a question to be considered in light of all of the circumstances. *State v. Heath*, 77 N.C. App. 264, 335 S.E.2d 350 (1985), *rev'd on other grounds*,

316 N.C. 337, 341 S.E.2d 565 (1986). In this case, Agent Milks had earlier testified, without objection, that she had no opinion as to the identity of the person whose spermatozoa she found. Defendant has failed to demonstrate a reasonable possibility that the jury would have reached a different result at trial had the challenged testimony been excluded. N.C. Gen. Stat. § 15A-1443(a) (1988); *State v. Martin*, 322 N.C. 229, 367 S.E.2d 618 (1988). In light of Agent Milks' testimony taken as a whole and the opportunity of defendant to cross-examine Agent Milks at trial, the challenged testimony was not prejudicial nor was there a reasonable possibility that a different result would have been reached if the trial court had excluded the statement. *State v. Ward*, 93 N.C. App. 682, 379 S.E.2d 251, *disc. review denied*, 325 N.C. 276, 384 S.E.2d 528 (1989).

[4] Defendant's final assignment of error is the trial court's denial of defendant's motion to dismiss the charges of armed robbery. Defendant was convicted of robbery with a dangerous weapon. The statutory crime of robbery with a dangerous weapon requires that the dangerous weapon be one which endangers or threatens life. N.C. Gen. Stat. § 14-87 (1986). Defendant contends that because evidence was presented that the victims in this case were robbed with a pellet pistol and a BB rifle with a broken stock, no dangerous weapon was used and the charge of armed robbery should have been dismissed. We disagree.

Our Supreme Court has established rules with which to resolve sufficiency of evidence questions in armed robbery cases where the instrument used appears to be, but may not in fact be a dangerous weapon capable of endangering or threatening life. *State v. Joyner*, 312 N.C. 779, 324 S.E.2d 841 (1985). A summary of those rules relevant to the present case includes:

> In an armed robbery case the jury may conclude that the weapon is what it appears to the victim to be in the absence of any evidence to the contrary. If, however, there is any evidence that the weapon was, in fact, not what it appeared to the victim to be, the jury must determine what, in fact, the instrument was.

*State v. Allen*, 317 N.C. 119, 125, 343 S.E.2d 893, 897 (1986).

Ms. Hannah testified that one of the perpetrators "had a big gun, [i]t looked like a shotgun," and that another perpetrator whom

Ms. Hannah identified as defendant had a gun in his hand that "looked like a long barrel pistol." Alfred Little described the pistol as "huge" and said that it appeared to be a revolver. The other assailant had a "rifle or shotgun." The only other descriptive evidence regarding the weapons came from witness Turner who testified that he observed defendant and another perpetrator at Lineberger Park on the evening in question from about five or ten feet away. Turner testified that the two men were "holding two guns at the people in the car," and that defendant had a ".357 pellet, CO-2 cartridge gun" and that the other man had "a rifle, a Crossman BB gun. The stock on it was broke off." Turner testified that he owned both guns.

Thus, there is evidence that it appeared to the victims that the robbery was committed with dangerous weapons as well as evidence tending to show that the weapons in question were not dangerous weapons within the contemplation of G.S. 14-87. *State v. Alston*, 305 N.C. 647, 290 S.E.2d 614 (1982). Therefore, the trial court was required to submit the case to the jury on the lesser included offense of common law robbery, as well as armed robbery, and it was for the jury to determine the nature of the weapon used. *Id.; State v. Allen*, 317 N.C. 119, 343 S.E.2d 893 (1986). In this case, the jury was given instructions as to both armed and common law robbery and a definition of "dangerous weapon" as "one which is likely to cause death or serious bodily injury." We find no error in the trial court's denial of defendant's motion to dismiss the charges of armed robbery.

We conclude that defendant received a fair trial free from prejudicial error.

No error.

Judges JOHNSON and GREENE concur.