STATE OF NORTH CAROLINA v. VANCE STERLING ALLEN

No. 413PA85

(Filed 3 June 1986)

**1. Robbery § 5.2— armed robbery—instruction on dangerous weapon—toy pistol**

In a case where the instrument used to commit a robbery is described as appearing to be a firearm or other dangerous weapon capable of threatening or endangering the life of the victim and there is no evidence to the contrary, it would be proper to instruct the jury to conclude that the instrument was what it appeared to be; however, the jury should not be so instructed if there is evidence that the instrument was not such a weapon but a toy pistol or some other instrument incapable of threatening or endangering the victim's life even if the victim thought otherwise.

**2. Robbery § 5.2— armed robbery—cap pistol—instructions erroneous**

The trial court erred in an armed robbery prosecution by instructing the jury that an instrument which appears to be a weapon capable of inflicting a life threatening injury is in law a dangerous weapon and that a cap pistol which looks like a real firearm is a dangerous weapon within the meaning of the armed robbery statute. No matter what an instrument appears to be, if in fact it is a cap pistol, a toy pistol, or some other instrument incapable of threatening or endangering life, it cannot be a firearm or other dangerous weapon within the meaning of the armed robbery statute; the jury should have been instructed that they could, but were not required to, infer from the instrument's appearance to the victim that it was a firearm or other dangerous weapon. N.C.G.S. § 14-87(a) (1981).

ON defendant's petition for discretionary review, pursuant to N.C.G.S. § 7A-31, of a decision of the Court of Appeals, 74 N.C. App. 449, 328 S.E. 2d 615 (1985), which found no error in defendant's conviction of robbery with a dangerous weapon and sentence of fourteen years' imprisonment, entered after a jury trial at the 12 June 1984 Session of MARTIN County Superior Court, *Bruce, J.,* presiding.

*Lacy H. Thornburg, Attorney General, by Thomas B. Wood, Assistant Attorney General, for the state.*

*Malcolm Ray Hunter, Jr., Acting Appellate Defender, for defendant appellant.*

EXUM, Justice.

We allowed defendant's petition for discretionary review to consider the following question: Whether the trial court commit-

State v. Allen

ted reversible error by instructing the jury in this armed robbery case that: "The term 'dangerous weapon' also includes pistols which look like firearms such as cap pistols. An instrument is a dangerous weapon if it is apparently a weapon capable of inflicting a life threatening injury." We answer the question affirmatively and reverse the Court of Appeals.

The state's evidence tended to show as follows: A black male wearing a ski mask entered the Quick Snack store in Williamston shortly before 11 p.m. on 10 September 1983, pointed what appeared to be a small caliber pistol at the clerk, Dorothy Davenport, and demanded the money in the cash register. Ms. Davenport saw the gun's barrel. When she gave the man the money, which included one or two $20 bills, she noticed a regular customer, Rudy Brown, an off-duty employee of the North Carolina Department of Correction, drive up to the store. As the masked man left the store still holding what appeared to be a small revolver, he met Brown and told him, "Get back or I'll shoot." Brown also saw the revolver's barrel.

The man fled on foot east on Highway 64 toward Martin General Hospital. Brown got in his car and pursued the man, stopping on the way to alert Chief Deputy Sheriff Jerry Beach. Brown saw the masked man, whom he identified as defendant, run into a wooded area, and observed him minutes later sitting behind the wheel of a car parked nearby. Defendant was out of breath and perspiring heavily when Brown and law enforcement officers apprehended him. Brown recognized defendant as the man who had confronted him at the Quick Snack store, although when apprehended the man was not wearing a ski mask. When the arresting officers searched him they found part of a gun in his pocket and a crumpled $20 bill in his pants. They found another crumpled $20 bill on the front seat of the car and defendant's wallet under the seat. When confronted by Deputy Sheriff Beach, defendant told him, "I'm on coke."

The state also offered defendant's statement to Beach indicating defendant had used a "cap pistol" to rob the store and had no intention of hurting the clerk. Defendant said he lost the money, ski mask and the front part of the cap pistol in the woods. The next morning Beach and other law enforcement officers combed the woods through which defendant had fled and found

the ski mask, but were unable to locate the money and the barrel of the pistol.

A gun dealer, Clifton Hollis, testified for the state that the gun taken from defendant was the lower half of an RG-10, .22 caliber pistol. The barrel and cylinder appeared to have been broken off at the lower trigger hammer. Hollis believed if a cylinder and barrel were attached to the part of the pistol in evidence, it would fire. In contrast, Deputy Sheriff Beach testified on cross-examination that defendant had told him on the night of his arrest that the barrel of the cap pistol he used had come off and he had reattached it with a rubber band. Consequently, the cap pistol would not fire.

Defendant offered no evidence.

The trial court instructed the jury it could find defendant guilty of armed robbery, common law robbery or not guilty. Pursuant to the state's request, and over defendant's objection, the trial court instructed the jury as follows:

> The term 'dangerous weapon' includes firearms. A .22 caliber pistol is a firearm within the meaning of the law as it applies to this case. The term 'dangerous weapon' also includes pistols which look like firearms such as cap pistols.
>
> An instrument is a dangerous weapon if it is apparently a weapon capable of inflicting a life threatening injury.

The jury found defendant guilty of armed robbery.

Armed robbery is defined in N.C.G.S. § 14-87(a) as follows:

> (a) Any person . . . who, having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another . . . shall be guilty of a Class D felony.

*Id.* We first note there is no contention that defendant used the pistol as anything but a pistol. He did not use it as a club. Having used the pistol only as a pistol, defendant argues the trial court's definition of the term "dangerous weapon" creates an impermissi-

ble mandatory presumption that whatever appears to be a dangerous weapon, even if in fact it is not, is in law a dangerous weapon. The state concedes inoperative firearms, and cap, or toy, pistols are not dangerous weapons within the meaning of the statute because they cannot endanger or threaten life when used as firearms. Nevertheless, the state argues that even if the instruction of the trial court was erroneous in the abstract, the error is not reversible because there is no credible evidence in this case that defendant in fact used an inoperative firearm or a cap pistol.

The Court of Appeals held "the evidence [that defendant had used a cap pistol] was not so compelling as to prevent a *permissive inference* of danger or threat to life or to require a directed verdict in defendant's favor as to the charge of robbery with a dangerous weapon." *State v. Allen*, 74 N.C. App. at 453, 328 S.E. 2d at 617. The Court of Appeals also concluded as follows:

> The evidence is clear that the object used by defendant in the commission of the robbery, notwithstanding the fact that it may have been an inoperable pistol or a cap pistol, was perceived by the victim to be a real gun. Accordingly, the trial court's instruction to the jury that a cap pistol could be a dangerous weapon if it is apparently capable of inflicting a life threatening injury, was not error.

*Id.* at 455, 328 S.E. 2d at 618. We agree that a permissive inference that the weapon defendant brandished was a firearm or other dangerous weapon may be drawn from the witnesses' testimony that it appeared to be so. But in the presence of evidence that a toy or cap pistol was in fact used, the law does not transform such an instrument into a dangerous weapon merely because it appears to be one.

We think both the trial court and the Court of Appeals misapplied some of our recent decisions on the "dangerous weapon" element of armed robbery. We begin with *State v. Thompson*, 297 N.C. 285, 254 S.E. 2d 526 (1979). In *Thompson* the state's evidence tended to show that defendant, brandishing what appeared to be a pistol, took cash belonging to a business from the presence of several employees. Defendant was accompanied by another man armed with a shotgun. On cross-examination, one of the employees, a state's witness, stated that "she did not know

State v. Allen

whether the shotgun was a real gun, a fake gun, a toy gun or what kind of gun, it was metal and did not look like a toy." *Id.* at 288, 254 S.E. 2d at 527. Another employee, testifying for the state, said on cross-examination, "With respect to the pistol, I don't know whether it was a real pistol, fake pistol, or what kind of pistol. It looked very real. It was not a cap pistol." *Id.*, 254 S.E. 2d at 528. The Court held that these admissions on cross-examination did not require submission of the lesser-included offense of common law robbery on the theory that the weapons brandished in the case might have been toys. The Court concluded that failure of the witnesses on cross-examination to positively testify that the weapons used were in fact real weapons was "not of sufficient probative value to warrant submission of the lesser included offense of common law robbery." 297 N.C. at 289, 254 S.E. 2d at 528. More importantly for our purposes here, the Court also said:

> When a person perpetrates a robbery by brandishing an instrument which appears to be a firearm, or other dangerous weapon, in the absence of any evidence to the contrary, the law will presume the instrument to be what his conduct represents it to be—a firearm or other dangerous weapon.

*Id.*

In *State v. Alston*, 305 N.C. 647, 290 S.E. 2d 614 (1982), the state's evidence tended to show that defendants, brandishing a rifle, took cash from a store in the presence of the store attendants. One of the attendants testified that the rifle appeared to be a .22 rifle and was not a BB gun or a pellet rifle. One of the state's witnesses, however, James Robinson, defendant's accomplice who actually wielded the rifle, testified on cross-examination that the instrument was actually a BB rifle. We concluded in *Alston* that a BB rifle could not be a firearm or other dangerous weapon within the meaning of the armed robbery statute because it was incapable of endangering or threatening a person's life. Therefore the testimony, offered by the state, that the rifle was a BB rifle "was affirmative testimony tending to prove the absence of an element of the offense charged and required the submission of the case to the jury on the lesser included offense of common law robbery." *Alston*, 305 N.C. at 651, 290 S.E. 2d at 614.

Finally, in *State v. Joyner*, 312 N.C. 779, 324 S.E. 2d 841 (1985), the question was whether the state's evidence was sufficient to overcome defendant's motion for a directed verdict on a charge of armed robbery. The state's evidence tended to show that defendant, brandishing what appeared to be a rifle, robbed a store of cash in the presence of store employees at approximately 2:45 a.m. on 7 December 1982. Defendant was apprehended at 8:30 a.m. on 7 December. Defendant confessed to the robbery and took detectives to an old abandoned building where he located a hidden .22 caliber bolt action rifle which he said he had used in the robbery. Defendant told detectives the rifle would not fire. Later the detectives determined the rifle had no firing pin. Possible verdicts of guilty of armed robbery, guilty of common law robbery or not guilty were submitted and the jury convicted defendant of armed robbery.

Defendant in *Joyner* contended on appeal that since the state's evidence showed the rifle he used was not loaded and did not have a firing pin, it could not have constituted an instrument whereby the life of a person could be endangered or threatened. This Court concluded the evidence was sufficient to be submitted to the jury on the question of defendant's guilt of armed robbery. The Court set out, for the first time, the appropriate evidentiary rules to resolve the sufficiency of evidence question in armed robbery cases where the instrument used appears to be, but may not in fact be, a firearm or other dangerous weapon capable of endangering or threatening the life of another. The rules are: (1) When a robbery is committed with what appeared to the victim to be a firearm or other dangerous weapon capable of endangering or threatening the life of the victim and there is no evidence to the contrary, there is a mandatory presumption that the weapon was as it appeared to the victim to be. (2) If there is some evidence that the implement used was not a firearm or other dangerous weapon which could have threatened or endangered the life of the victim, the mandatory presumption disappears leaving only a permissive inference, which permits but does not require the jury to infer that the instrument used was in fact a firearm or other dangerous weapon whereby the victim's life was endangered or threatened. (3) If all the evidence shows the instrument could not have been a firearm or other dangerous weapon

capable of threatening or endangering the life of the victim, the armed robbery charge should not be submitted to the jury.

Neither *Thompson, Alston* nor *Joyner* stands for the proposition that the state in armed robbery cases is relieved from the burden of proving beyond a reasonable doubt that the instrument used is in fact a firearm or dangerous weapon which in fact does endanger or threaten the life of the victim. All of these cases deal with whether the evidence was sufficient to permit the jury to make these essential findings. *Joyner*, however, does permit the state to rely on a mandatory presumption that an instrument which appears to the victim to be a firearm or other dangerous weapon capable of threatening or endangering the victim's life is in law such a weapon when and only when there is no evidence in the case to the contrary.

[1] A fair summary of our holdings in this area would be this: In an armed robbery case the jury may conclude that the weapon is what it appears to the victim to be in the absence of any evidence to the contrary. If, however, there is any evidence that the weapon was, in fact, not what it appeared to the victim to be, the jury must determine what, in fact, the instrument was. Finally, if other evidence shows conclusively that the weapon was not what it appeared to be, then the jury should not be permitted to find that it was what it appeared to be.

Accordingly, in a case where the instrument used to commit a robbery is described as appearing to be a firearm or other dangerous weapon capable of threatening or endangering the life of the victim and there is no evidence to the contrary, it would be proper to instruct the jury to conclude that the instrument was what it appeared to be. The jury should not be so instructed if there is evidence that the instrument was not, in fact, such a weapon, but was a toy pistol or some other instrument incapable of threatening or endangering the victim's life even if the victim thought otherwise.

[2] In the instant case there was evidence that the instrument used by defendant in the robbery appeared to be a firearm capable of endangering or threatening the life of the victim. There was also evidence that the instrument was either a cap pistol or an inoperative firearm incapable of threatening or endangering the life of the victim. It was thus for the jury to determine the

nature of the weapon. The jury should have been instructed that they could, but were not required to, infer from the instrument's appearance to the victim that it was a firearm or other dangerous weapon. Judge Bruce's instruction that an instrument which appears to be a weapon capable of inflicting a life-threatening injury is in law a dangerous weapon effectively gave the state the benefit of a mandatory presumption when it was entitled only to the benefit of a permissive inference.

Judge Bruce also erred in instructing the jury that a cap pistol which looks like a real firearm is a "dangerous weapon" within the meaning of the armed robbery statute. No matter what an instrument appears to be, if in fact it is a cap pistol, or a toy pistol, or some other instrument incapable of threatening or endangering life, it cannot be a firearm or other dangerous weapon within the meaning of the armed robbery statute.

These instructions deprived defendant of having the jury properly consider evidence in the case that the instrument he used was in fact not a firearm or other dangerous weapon but was a cap pistol or an inoperative firearm. Even if the jury had believed this evidence, under Judge Bruce's instructions it nevertheless would have been compelled to convict defendant of armed robbery when under appropriate legal principles he would have been guilty at most of common law robbery.

The state argues the evidence tending to show the instrument used by defendant was either a cap pistol or an inoperative firearm was not credible and could not under any circumstance have been believed by the jury. Therefore, the trial judge's instruction, even if error in the abstract, could not have harmed this defendant. Suffice it to say that the evidence in question was not so lacking in credibility that the jury should not have been permitted to consider it. The existence of this evidence and the possibility that the jury might have believed it formed the basis of the trial judge's instructions on the alternative lesser-included offense of common law robbery. The credibility of this evidence was ultimately for the jury. If the jury believed it, defendant, under proper instructions, could have been found guilty at most of common law robbery. *See State v. Alston*, 305 N.C. 647, 290 S.E. 2d 614. The instructions as given effectively removed this evidence from the jury's consideration. Under these circum-

stances we think there is a reasonable possibility that had the error in the instructions not been made a different result would have been reached at the trial. N.C.G.S. § 15A-1443.

The decision of the Court of Appeals is, therefore, reversed and the case remanded to that court for further remand to the Superior Court of Martin County for a new trial.

Reversed and remanded.