STATE OF NORTH CAROLINA v. TONY WILLIAMS

No. 914SC827

(Filed 15 December 1992)

**Robbery § 5.2 (NCI3d)— armed robbery—appearance of firearm—
instruction on presumption of danger to victim's life**

Neither the State nor the defendant presented any evidence
that defendant did not use a firearm or other dangerous weapon
in a robbery and an attempted robbery, and the trial court
properly instructed the jury on the mandatory presumption
that a victim's life is endangered or threatened when there
is evidence that defendant committed a robbery with what
appeared to the victim to be a firearm or other dangerous
weapon, where the robbery victim testified that defendant
had what looked like a pistol wrapped up in something and
that it "stuck out"; the attempted robbery victim testified
that defendant had his hand in his coat and was pointing
something at her, and that she "thought it was a gun" because
"he kept pointing it at me and saying he was going to shoot
me"; and defendant testified that he was at his brother's birth-
day party at the time of the robberies and that he did not
own a gun or "mess with" guns. Neither testimony by the
victims nor defendant's denial of the complete offense in each
case and his denial of gun ownership constituted "some evidence"
that the instrument used by defendant was incapable of threat-
ening or endangering the victims' lives.

**Am Jur 2d, Trial §§ 1293, 1294.**

Judge WYNN dissenting.

Appeal by defendant from judgment entered 14 February 1991 in Sampson County Superior Court by Judge Henry L. Stevens, III. Heard in the Court of Appeals 16 October 1992.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Donald W. Laton, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., and Assistant Appellate Defender, M. Patricia DeVine, for defendant-appellant.*

GREENE, Judge.

Defendant appeals from a judgment entered 14 February 1991, which judgment is based on a jury verdict in consolidated cases convicting defendant of robbery with a dangerous weapon and attempted robbery with a dangerous weapon, N.C.G.S. § 14-87 (1986).

The evidence presented by the State established that on the evening of 20 November 1990, Janet Jordan (Jordan) was working as a cashier at The Scotchman, a convenience store located in Sampson County. At approximately 7:20 p.m., a black male, later identified by Jordan as defendant, entered the store and approached the counter. He pulled something out of his pocket, looked at Jordan, and said, "Give me your money." According to Jordan's testimony on direct examination, the object that the man pulled out of his pocket "looked like a pistol, but he had it wrapped up where I couldn't see what it was. It looked like the way he was holding it [—] it looked like a pistol that he had wrapped in something, and it stuck out." When asked whether she believed the object to be a real gun, Jordan answered, "Well, I thought it was."

The man demanded that Jordan open the cash register, and then took a total of $60.00 — all of the money in the register except for the coins. After taking the money, the man ran out of the store, and Jordan immediately called the police. Based on her observation of the man during the robbery, Jordan described him as light-skinned, in his upper twenties, weighing approximately 150 pounds and being five feet, six inches tall, and wearing a cap and a shiny red jacket.

At approximately 10:20 p.m., a black male entered the Petro Mart in Sampson County and approached Cathy Tew Smith (Smith), the cashier, who was cleaning the store at the time. The man, who Smith later identified as defendant, then approached the counter

and asked for a pack of cigarettes. Smith testified that as soon as she hit the cigarette key on the cash register, the man demanded that she "open the drawer, b----, open the drawer b---- right now or I'll shoot you." The man had his right hand in his jacket pocket pointing it toward Smith. Smith testified on direct examination that she "thought he had a gun because he was pointing at me and he kept saying that he was going to shoot me." He was beating on the counter with his left fist, continually demanding that Smith "open the drawer." Smith became flustered and could not open the cash register, and finally the man pulled the register onto the floor. When it still would not open, the man fled the store. Smith described the man as wearing a light blue jacket and a cap, and being approximately five feet, six inches tall. The transaction at the Petro Mart was captured on the store's videotape.

Defendant testified that he did not commit the robberies with which he is charged. He stated that on the day of the robberies, he was with friends and family celebrating his younger brother's birthday, and further testified that he did not own a gun and did not "mess with guns." Defendant's younger brother, older brother, and five friends also testified on behalf of defendant. Each of the witnesses corroborated defendant's testimony.

At the close of all the evidence, defendant made a motion to dismiss the charges, which was denied. The trial court conducted an in-chambers charge conference, which was not recorded. The transcript indicates, however, that defendant objected to the portions of the charge "concerning a dangerous weapon." The trial court first instructed the jury on attempted robbery with a dangerous weapon. In relevant part, the court instructed the jury that to find defendant guilty, the jury must find that defendant

> used, or threatened to use a dangerous weapon or purported dangerous weapon in such a way as to endanger or threaten the life of that person, or by conduct which reasonably caused her to believe that her life was being endangered or threatened at the time. . . . Now, listen well, when a person attempts or perpetrates a robbery in such a way that it purportedly and reasonably appears to the victim that a firearm or other dangerous weapon is being used by such person, in the absence of any evidence to the contrary, the law of this state presumes the instrument to be what his conduct represented it to be, that is, a firearm or other dangerous weapon.

The relevant portion of the court's charge on robbery with a dangerous weapon is essentially identical to the above-quoted passage. The trial court in each case also instructed the jury that, if it did not find defendant guilty of robbery (or attempted robbery) with a dangerous weapon, that it could find defendant guilty of common law robbery, or not guilty.

The jury convicted defendant of robbery with a dangerous weapon and attempted robbery with a dangerous weapon, and the trial court sentenced defendant to forty years imprisonment. Defendant appeals.

---

The dispositive issue is whether there is any evidence that defendant did not use a firearm or other dangerous weapon capable of threatening or endangering the life of the victims.

Defendant argues that the trial court committed reversible error in its instruction on robbery with a dangerous weapon and attempted robbery with a dangerous weapon. Specifically, defendant contends that, based on the evidence in the case, the court's instruction that the law, in the absence of evidence to the contrary, presumes that an instrument is what the defendant's conduct represented it to be, is contrary to the law of North Carolina and violates defendant's right to due process of law.

A person commits robbery with a dangerous weapon when he, "having in possession or with the use or threatened use of any firearms or other dangerous weapon . . . whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another or from any place of business . . . where there is a person or persons in attendance . . . ." N.C.G.S. § 14-87(a) (1986). It is well-established that

> [w]hen a person commits a robbery by the use or threatened use of an implement which appears to be a firearm or other dangerous weapon, *the law presumes*, in the absence of any evidence to the contrary, that the instrument is what his conduct represents it to be—an implement endangering or threatening the life of the person being robbed. Thus, where there is evidence that a defendant has committed a robbery with what appears to the victim to be a firearm or other dangerous weapon *and nothing to the contrary appears in evidence*, the

presumption that the victim's life was endangered or threatened is mandatory.

*State v. Joyner*, 312 N.C. 779, 782, 324 S.E.2d 841, 844 (1985) (citations omitted). This mandatory presumption is valid, *id.* at 783, 324 S.E.2d at 844; *see also State v. White*, 300 N.C. 494, 507, 268 S.E.2d 481, 489-90 (1980), and does not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *State v. Blair*, 101 N.C. App. 653, 657, 401 S.E.2d 102, 105 (1991). When *any* evidence is introduced which tends to establish that the victim's life was not endangered or threatened by a firearm or other dangerous weapon, "the mandatory presumption disappears, leaving . . . a mere permissive inference" which permits but does not require the jury to infer from proof of robbery with what appeared to the victim to be a firearm or other dangerous weapon, that the victim's life was endangered or threatened. *Id.* Accordingly,

> in a case where the instrument used to commit a robbery is described as appearing to be a firearm or other dangerous weapon capable of threatening or endangering the life of the victim and there is no evidence to the contrary, *it would be proper to instruct the jury to conclude that the instrument was what it appeared to be.* The jury should not be so instructed if there is evidence that the instrument was not, in fact, such a weapon, but was a toy pistol or some other instrument incapable of threatening or endangering the victim's life even if the victim thought otherwise.

*State v. Allen*, 317 N.C. 119, 125, 343 S.E.2d 893, 897 (1986) (emphasis added).

In light of the foregoing principles, the pivotal question in the instant case is whether either defendant or the State presented *any evidence* that defendant did not use a firearm or other dangerous weapon. A victim's testimony that the instrument used by the defendant during a robbery appeared to be a gun, but that he "could not positively say" that it was a gun does not constitute such evidence. *See State v. Thompson*, 297 N.C. 285, 289, 254 S.E.2d 526, 528 (1979) (admission of victim who testified that he was robbed by use of a firearm but that he could not positively say it was a gun is of insufficient probative value to warrant submission of common law robbery). Whether the victim makes such an admission on cross-examination or direct examination is immaterial.

STATE v. WILLIAMS

[108 N.C. App. 295 (1992)]

The State presented the testimony of the two victims. Jordan testified that, during the robbery, defendant had what looked like a pistol wrapped up in something, and that it "stuck out." Smith testified that defendant had his hand in his coat and was pointing something at her, and that she "thought it was a gun" because "he kept pointing it at me and saying he was going to shoot me."[1] Defendant testified that he was at his brother's birthday party at the time of the robberies, and that he did not own a gun or "mess with" guns. Neither defendant's denial of the complete offense in each case and his general denial regarding ownership of a gun, nor the testimony of the victims, constitutes "some evidence" that the instrument used by defendant was incapable of threatening or endangering the victims' lives. There is no evidence that during the robberies defendant used a toy gun, a cap gun, or an inoperative pistol. Accordingly, the trial court correctly gave the mandatory presumption instruction.

No error.

Judge WALKER concurs.

Judge WYNN dissents with separate opinion.

Judge WYNN dissenting.

I disagree with the conclusion reached by the majority that neither the state nor the defendant presented *any evidence* that the defendant did not use a firearm or dangerous weapon. Both victims offered testimony that they were unsure as to whether the robber possessed a firearm. Although Ms. Smith testified that the robber pointed his right jacket pocket at her as if he had a gun inside his pocket, she nonetheless concluded that she "didn't see no gun." Likewise, Ms. Jordan testified that the robber wielded something that "looked like a pistol, but it was wrapped up where I couldn't see what it was."

---

1. We see no valid distinction between testimony that what a defendant used during a robbery "appeared to be" a firearm and testimony that the victim "thought it was" a firearm. In both instances, absent some evidence that the defendant did not have a firearm or other dangerous weapon, it is proper for the trial court to instruct the jury on the mandatory presumption.

Under *State v. Thompson*, 297 N.C. 285, 254 S.E.2d 526 (1979) and *State v. Joyner*, 312 N.C. 779, 324 S.E.2d 841 (1985), the law presumes that an implement that appears to be a dangerous or deadly weapon is what it appears to be, in the absence of any evidence to the contrary. In *Thompson*, the court held that an eye-witness's concession on cross-examination that what appeared to be a gun might not have been, in fact, a gun "was not of sufficient probative value" to constitute contrary evidence. Thus, it would appear that the evidence elicited from the victims in this case, standing alone, would not be enough to warrant a rejection of an instruction on the mandatory presumption.

However, in the subject case, the defendant in presenting an alibi defense, took the stand and testified in his own behalf that he did not "mess with guns." Moreover, on cross-examination, when the prosecutor asked the defendant, "Mr. Williams, did you testify you don't have a gun, you don't mess with guns?," the defendant replied, "Correct. I don't own a gun." This evidence, when coupled with the evidence that neither of the victims ever saw a gun, is evidence that the defendant did not have a gun. It was therefore error to give the mandatory presumption instruction in this case.