STATE OF NORTH CAROLINA v. HAROLD RAY FLEMING
(A/K/A HAROLD RAY FLEMMING)

No. COA00-1412

(Filed 28 December 2001)

**1. Robbery— dangerous weapon—BB gun—no evidence of capability to inflict death or great bodily harm**

The trial court erred by not dismissing an armed robbery charge where it was clear that the weapon was a BB gun, even giving the State all reasonable inferences which could be drawn from the facts, and there was no evidence in the record of the BB gun's capability to inflict death or great bodily injury. The presumption that a brandished instrument which appears to be a dangerous weapon is what it appears to be applies in the absence of any evidence to the contrary. Finally, there was plain error in · that the trial court instructed on robbery with a dangerous weapon and on common law robbery using the Pattern Jury Instruction, but did not define "dangerous weapon."

### 2. Evidence— failure to rule on objection—evidence admissible—error not prejudicial

There was no prejudicial error in an armed robbery prosecution where defendant contended that the court erred by failing to rule on his objection to a question to a police detective as to whether he had defendant on videotape for other robberies where the evidence was properly admitted because defendant had opened the door.

Appeal by defendant from judgment entered 13 July 2000 by Judge Clarence W. Carter in Forsyth County Superior Court. Heard in the Court of Appeals 17 October 2001.

*Attorney General Roy Cooper, by Assistant Attorney General Robert R. Gelblum for the State.*

*J. Clark Fischer for defendant appellant.*

McCULLOUGH, Judge.

Defendant Harold Ray Fleming was tried at the 12 July 2000 Criminal Session of Forsyth County Superior Court after being charged with two counts of robbery with a dangerous weapon. Evidence for the State showed that on 11 March 2000 a man, later identified as defendant, went to Advance America, a cash/payday advance service located in Winston-Salem, North Carolina. The only person inside the business was employee Shannon Qayd. Once inside, defendant inquired about opening an account. Ms. Qayd noticed that defendant was wearing a black toboggan and had some discoloration of his lower lip. When Ms. Qayd brought defendant the requested information, he displayed a gun and a white plastic bag in one hand and told Ms. Qayd to give him the money. Ms. Qayd complied and gave defendant the money from the cash register. Defendant then told Ms. Qayd to give him the money out of the safe. Defendant followed Ms. Qayd to the back of the store and told her, "I'm coming with you." He was still holding the gun and the white plastic bag.

Ms. Qayd opened the safe and gave defendant the money inside. Defendant then asked Ms. Qayd to give him the store's videotape. She replied that the system was fake and that there was no tape. Defendant told Ms. Qayd to go to the back of the store, and he left with $1,321.00 in cash from Advance America.

STATE v. FLEMING

[148 N.C. App. 16 (2001)]

On 14 March 2000, defendant entered All Care Insurance Agency (All Care) located a few stores away from Advance America in the same shopping center in Winston-Salem. Once inside, defendant requested automobile insurance quotes. Defendant was again wearing a toboggan and witnesses noticed a white discoloration on his lower lip. Three employees were present at All Care at the time defendant entered the business. Ms. Robin Vantorre, one of the employees, asked defendant to get the vehicle identification number from his car so she could give him an accurate insurance quote. Defendant responded by placing a white plastic bag on the counter, saying, "Why don't you fill this up with your money." When Ms. Vantorre did not immediately comply, defendant opened his coat long enough for her to see the butt of a gun sticking out of the waistband of his pants. He then stated, "I'm serious, fill up the bag with the money." Ms. Vantorre then filled the bag with money from the cash register, while All Care owner William Lambert gave defendant his money.

Defendant asked Mr. Lambert where the safe was, and was told, "That's all there is." Defendant walked to the back room with Ms. Vantorre, her coworker, and Mr. Lambert, and told them to remain in that room until he left. Ms. Vantorre and Mr. Lambert kept the door to the back room cracked open and heard defendant exit the business less than five minutes later. They watched defendant wander around the parking lot for a few minutes, then saw him get into a red Mitsubishi Eclipse and leave the area.

Ms. Vantorre called 911 and described both defendant and his vehicle to the dispatcher. A few minutes later, Officer R.B. Rose of the Winston-Salem Police Department stopped a red Mitsubishi Eclipse driven by defendant. Officer Rose noted that defendant had a white discoloration on his lower lip, which was also described by employees at both All Care and Advance America. Upon searching defendant, Officer Rose and the investigating officer assisting him recovered a BB gun from defendant's waistband. After looking inside the car, the officers found a white plastic bag between the driver's seat and the console. The bag contained $286.00 in cash, the same amount Mr. Lambert testified was taken from All Care during the robbery.

The officers also recovered a black toboggan from beneath the driver's seat and a pair of zippered gloves from a side pocket in the driver's door of the Mitsubishi Eclipse. When shown the items at trial, Ms. Qayd testified that the gloves and the toboggan appeared to be

the same ones worn by the man who robbed Advance America. Ms. Vantorre testified that the jacket defendant was wearing when he was stopped by the officers appeared to be the same one worn by the man who robbed All Care.

Defendant was arrested and read his *Miranda* rights by Detective R.W. Beasley of the Winston-Salem Police Department. Thereafter, he signed a waiver of those rights and wrote out a confession regarding the robbery of All Care: "Went on Peters Creek, robbed the insurance company." On 1 May 2000, defendant was indicted on two counts of robbery with a dangerous weapon and was tried before a jury after the charges were joined for trial. The jury found defendant guilty on both counts. During sentencing, defendant was found to have a prior record level of IV and was sentenced to consecutive terms of 146-185 months' imprisonment on each conviction. Defendant appealed only his conviction in the 14 March 2000 All Care robbery.

On appeal, defendant argues that the trial court committed reversible error by (I) denying his motion to dismiss the All Care robbery with a dangerous weapon charge because the evidence showed that the weapon, a BB gun, was not a deadly weapon; and (II) failing to rule on his objection to the State's redirect examination of a police detective regarding whether the detective had defendant on videotape in a different robbery. For the reasons set forth, we vacate defendant's conviction of robbery with a dangerous weapon and remand the case for resentencing on the lesser included offense of common law robbery.

## Nature of the Weapon

[1] By his first assignment of error, defendant argues the trial court should have granted his motion to dismiss because the evidence showed that the weapon used by him in the All Care robbery was a BB gun, which does not qualify as a "dangerous weapon" under N.C. Gen. Stat. § 14-87 (1999).

Defendant was charged with two counts of robbery with a dangerous weapon, a crime codified by N.C. Gen. Stat. § 14-87. Section 14-87(a) states:

(a) Any person or persons who, having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another or from any place of business,

STATE v. FLEMING

[148 N.C. App. 16 (2001)]

residence or banking institution or any other place where there is a person or persons in attendance, at any time, either day or night, or who aids or abets any such person or persons in the commission of such crime, shall be guilty of a Class D felony.

"Under G.S. 14-87, an armed robbery is defined as the nonconsensual taking of the personal property of another in his presence or from his person by endangering or threatening his life with a firearm or other deadly weapon, with the taker knowing that he is not entitled to the property and intending to permanently deprive the owner thereof." *State v. Bates*, 309 N.C. 528, 534, 308 S.E.2d 258, 262 (1983). To sustain a conviction of robbery under N.C. Gen. Stat. § 14-87, the State must prove "(1) the unlawful taking or attempted taking of personal property from another; (2) the possession, use or threatened use of 'firearms or other dangerous weapon, implement or means'; and (3) danger or threat to the life of the victim." *State v. Joyner*, 295 N.C. 55, 63, 243 S.E.2d 367, 373 (1978) (quoting N.C. Gen. Stat. § 14-87(a)). A dangerous weapon "is generally defined as any article, instrument or substance which is likely to produce death or great bodily injury." *State v. Sturdivant*, 304 N.C. 293, 301, 283 S.E.2d 719, 725 (1981). "[A]ctual possession and use or threatened use of firearms or other dangerous weapon is necessary to constitute the offense of robbery with firearms or other dangerous weapon." *State v. Faulkner*, 5 N.C. App. 113, 119, 168 S.E.2d 9, 13 (1969). With these general principles in mind, we turn to defendant's motion to dismiss.

"In ruling on a motion to dismiss, all evidence admitted must be considered in the light most favorable to the State, giving the State the benefit of all reasonable inferences to be drawn therefrom." *In re Stowe*, 118 N.C. App. 662, 664, 456 S.E.2d 336, 337 (1995). Defendant's motion to dismiss "is properly denied if the evidence, when viewed in the above light, is such that a rational trier of fact could find beyond a reasonable doubt the existence of each element of the crime charged." *State v. Williams*, 334 N.C. 440, 447, 434 S.E.2d 588, 592 (1993), *judgment vacated on other grounds sub nom. N.C. v. Bryant*, 511 U.S. 1001, 128 L. Ed. 2d 42 (1994).

Defendant maintains the State failed to prove all the elements of the charge of robbery with a dangerous weapon. More specifically, defendant argues that the lives of the employees at All Care were not in danger because he did not use an instrument that was likely to inflict death or great bodily injury, since the weapon he used was a BB gun. We agree.

STATE v. FLEMING

[148 N.C. App. 16 (2001)]

Ms. Vantorre, an employee at All Care, testified as follows:

[Prosecutor]: At some point did the Defendant—or did the man who walked in the store show you a gun?

[Ms. Vantorre]: He opened his jacket—when he asked for the money to start with I didn't respond immediately because I was just like, did you say what I thought you just said, he opened his coat and all I could see was the butt, that appeared to me to look like a butt of a gun sticking in his waistband, and then he shut his coat back up.

. . . .

[Prosecutor]: Showing you what's been marked as State's Exhibit 1 for identification, did you see this gun on that day, on the 14th?

[Ms. Vantorre]: I couldn't tell you if it was that gun. I didn't see the whole gun that day.

[Prosecutor]: The gun that you saw on the Defendant that he showed to you, it was stuffed in his pants?

[Ms. Vantorre]: Uh-huh.

[Prosecutor]: Okay. Do you recognize any of this—

. . . .

[Ms. Vantorre]: I don't remember. I was just—it just scared me to death. I could tell it was a gun.

[Prosecutor]: But you cannot identify State's Exhibit 1 as the gun that was used.

[Ms. Vantorre]: No.

On cross-examination, Ms. Vantorre admitted that only a few minutes elapsed from the time defendant showed her the weapon in his waistband to the time he went to his car. Defendant's attorney also asked questions which revealed that defendant was apprehended by police officers just minutes after the 911 call was made by Ms. Vantorre. Officer Rose retrieved a BB gun from defendant's waistband during a pat-down search, a total of five minutes after Ms. Vantorre saw it tucked in the waistband of the man who robbed All Care. Even giving the State all reasonable inferences which may be drawn from the above-recited facts, it is clear the weapon in question was, in fact, a

BB gun. Defendant maintains that these facts constitute sufficient evidence to conclude that a dangerous weapon was not used, such that he could not be convicted of robbery with a dangerous weapon under N.C. Gen. Stat. § 14-87.

"Our Supreme Court has established rules with which to resolve sufficiency of evidence questions in armed robbery cases where the instrument used appears to be, but may not in fact be a dangerous weapon capable of endangering or threatening life." *State v. Summey*, 109 N.C. App. 518, 528, 428 S.E.2d 245, 251 (1993). The rules are as follows:

> (1) When a robbery is committed with what appeared to the victim to be a firearm or other dangerous weapon capable of endangering or threatening the life of the victim and there is no evidence to the contrary, there is a mandatory presumption that the weapon was as it appeared to the victim to be. (2) If there is some evidence that the implement used was not a firearm or other dangerous weapon which could have threatened or endangered the life of the victim, the mandatory presumption disappears leaving only a permissive inference, which permits but does not require the jury to infer that the instrument used was in fact a firearm or other dangerous weapon whereby the victim's life was endangered or threatened. (3) If all the evidence shows the instrument could not have been a firearm or other dangerous weapon capable of threatening or endangering the life of the victim, the armed robbery charge should not be submitted to the jury.

*State v. Allen*, 317 N.C. 119, 124-25, 343 S.E.2d 893, 897 (1986).

Defendant argues that his case falls under subsection (3) above, while the State maintains that defendant's case falls under subsection (2), wherein the jury is permitted to infer that the instrument used was a dangerous weapon. The State argues that it is not completely clear whether the BB gun found by the officers was the same instrument used by defendant in the robbery of All Care. We reject this argument, as set forth previously. We agree that defendant's case could fall under *Allen* subsection (2), if the State had introduced evidence of the BB gun's capability to inflict death or great bodily injury. Had the State presented such evidence, the jury would have been allowed to make a permissible inference "which permits but does not require the jury to infer that the instrument used was in fact a firearm or other dangerous weapon whereby the victim's life was endangered or threatened." *See Allen*, 317 N.C. at 124-25, 343 S.E.2d at 897.

STATE v. FLEMING

[148 N.C. App. 16 (2001)]

With regard to the charges of robbery with a dangerous weapon, the trial court instructed the jury as follows:

> The second case, which has been referred to as the All Care Insurance Agency case, in that case the Defendant has been accused of robbery with a firearm, which is taking and carrying away the personal property of another from his presence—from his person or in his presence without his consent by endangering or threatening a person's life with a firearm, the taker knowing that he was not entitled to take the property and intending to deprive another of its use permanently.
>
> Now, I charge that for you to find the Defendant guilty of robbery with a firearm the State must prove seven things beyond a reasonable doubt. First, that the Defendant took property from the person of another or in his presence.
>
> Second, that the Defendant carried the—away the property.
>
> Third, that the person did not voluntarily consent to the taking and carrying away of the property.
>
> Fourth, that the Defendant knew he was not entitled to take the property.
>
> Fifth, that at the time of taking, the Defendant intended to deprive the person of its use permanently.
>
> Sixth, that the Defendant had a firearm in his possession at the time he obtained the property or that it reasonably appeared to the victim that a firearm was being used, in which case you may infer that the said instrument was what the Defendant's conduct represented it to be.
>
> And seventh, that the Defendant obtained the property by endangering or threatening the life of that person, with the firearm.
>
> So I charge that if you find from the evidence beyond a reasonable doubt that on or about the alleged date the Defendant had in his possession a firearm and took and carried away property from the person or presence of a person without his [sic] voluntary consent by endangering or threatening her life with the use or threatened use of a firearm, the Defendant knowing that he was not entitled to take the property, and intending to deprive

that person of its use permanently, it would be your duty to return a verdict of robbery with a firearm.

However, if you do not so find or have a reasonable doubt as to one or more of these things, you will not return a verdict of guilty of robbery with a firearm.

In *State v. Thompson*, 297 N.C. 285, 289, 254 S.E.2d 526, 528 (1979), our Supreme Court stated:

When a person perpetrates a robbery by brandishing an instrument which appears to be a firearm, or other dangerous weapon, in the absence of any evidence to the contrary, the law will presume the instrument to be what his conduct represents it to be—a firearm or other dangerous weapon.

The *Thompson* scenario is not applicable in the current case because we have concluded that the only reasonable inference to be drawn from the evidence presented at trial was that a BB gun was utilized by defendant. Thus, there was affirmative testimony "tending to prove the absence of an element of the offense charged and required the submission of the case to the jury on the lesser included offense of common law robbery as well as the greater offense of robbery with firearms or other dangerous weapons." *State v. Alston*, 305 N.C. 647, 651, 290 S.E.2d 614, 616 (1982). In the present case, the trial court instructed the jury on both robbery with a dangerous weapon and common law robbery.

*Alston* is also helpful to our determination of whether the BB gun was a "dangerous weapon." "In determining whether evidence of the use of a particular instrument constitutes evidence of use of 'any firearms or other dangerous weapon, implement or means' within the prohibition of G.S. 14-87, the determinative question is whether the evidence was sufficient to support a jury finding that a person's *life* was in fact endangered or threatened." *Alston*, 305 N.C. at 650, 290 S.E.2d at 614 (quoting N.C. Gen. Stat. § 14-87). Based on the facts presented at trial, the *Alston* Court concluded that a BB gun could not be a firearm or other dangerous weapon within the meaning of N.C. Gen. Stat. § 14-87 because it was incapable of endangering or threatening the life of a person. *Id.* at 651, 290 S.E.2d at 616; *see also Allen*, 317 N.C. at 123, 343 S.E.2d at 896. We decline to hold, as a matter of law, that a BB gun can *never* be a dangerous weapon. *See State v. Westall*, 116 N.C. App. 534, 540, 449 S.E.2d 24, 28, *disc. review denied*, 338 N.C. 671, 453 S.E.2d 185 (1994) (declining to hold, as a matter of

law, that a pellet gun is or is not a dangerous weapon). For a jury to find that a BB gun *is* a dangerous weapon, there must be evidence in the record of the BB gun's capability to inflict death or great bodily injury. Such evidence is lacking in the case at bar.

In furtherance of this point, our Supreme Court has also stated:

[I]n a case where the instrument used to commit a robbery is described as appearing to be a firearm or other dangerous weapon capable of threatening or endangering the life of the victim and there is no evidence to the contrary, it would be proper to instruct the jury to conclude that the instrument was what it appeared to be. The jury should not be so instructed if there is evidence that the instrument was not, in fact, such a weapon, but was a toy pistol or some other instrument incapable of threatening or endangering the victim's life even if the victim thought otherwise.

*Allen*, 317 N.C. at 125, 343 S.E.2d at 897.

In the present case, after the trial court instructed the jury on robbery with a dangerous weapon, it then gave the standard instruction on common law robbery. This was precisely the action taken by the trial court in *Summey*, 109 N.C. App. 518, 428 S.E.2d 245. In *Summey*, defendant was convicted of robbery with a dangerous weapon. *Id.* at 528, 428 S.E.2d at 250. Defendant moved to dismiss the case because there was evidence that the victims were robbed with a pellet pistol and a BB rifle with a broken stock, and he maintained that no dangerous weapon was used. *Id.* In concluding that defendant's motion to dismiss was properly denied, the *Summey* Court noted the following:

Thus, there is evidence that it appeared to the victims that the robbery was committed with dangerous weapons as well as evidence tending to show that the weapons in question were not dangerous weapons within the contemplation of G.S. 14-87. *State v. Alston*, 305 N.C. 647, 290 S.E.2d 614 (1982). Therefore, the trial court was required to submit the case to the jury on the lesser included offense of common law robbery, as well as armed robbery, and it was for the jury to determine the nature of the weapon used. *Id.*; *State v. Allen*, 317 N.C. 119, 343 S.E.2d 893 (1986). In this case, the jury was given instructions as to both armed and common law robbery *and a definition of "dangerous weapon" as "one which is likely to cause death or serious bod-*

*ily injury."* We find no error in the trial court's denial of defendant's motion to dismiss the charges of armed robbery.

*Id.* at 529, 428 S.E.2d at 251 (emphasis added). While we note that the trial court's instruction was identical in all pertinent respects to N.C.P.I., Crim. 217.20, we also note that the trial court failed to define a dangerous weapon. We conclude that, in the context of this case, such an omission constitutes plain error.

We thus hold that, when a weapon such as a BB gun is determined to be the weapon used in a particular case, the record must contain evidence to support the jury's finding that the instrument was a dangerous weapon. Moreover, the jury must be properly instructed with a definition of a dangerous weapon. The absence of both these requirements compels us to vacate defendant's conviction of robbery with a dangerous weapon and remand the case to the trial court for resentencing on the lesser included offense of common law robbery.

## Detective's Testimony

[2] Defendant next argues that the trial court erred in failing to rule on his objection to a question posited by the State to a police detective on redirect as to whether he had defendant on videotape for other robberies. Defendant essentially argues the detective's testimony was impermissible Rule 404(b) testimony that should have been excluded. We do not agree.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (1999) states:

(b) Other crimes, wrongs, or acts.—Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident. Admissible evidence may include evidence of an offense committed by a juvenile if it would have been a Class A, B1, B2, C, D, or E felony if committed by an adult.

At trial, the State called Detective R.W. Beasley to testify about his contact with defendant after he was arrested for the robbery of All Care. Detective Beasley testified that he read defendant his *Miranda* rights, got a confession from defendant, and later prepared a photographic line-up, with defendant's photo in the group. Ms. Qayd

positively identified defendant as the man who robbed Advance America. When defendant's attorney cross-examined Detective Beasley, the following exchange took place:

[Defense Attorney]: Whenever you were questioning Mr. Fleming, did you ever tell him that he was caught on video camera or videotape?

[Prosecutor]: Objection. If we could approach.

THE COURT: Step up here. (Counsel approach the bench; discussions were off the record.)

[Defense Attorney]: Officer Beasley—or Detective Beasley, sorry, let me ask you this, when you were questioning Mr. Fleming regarding the robbery at the All Care Insurance Company and the robbery at the Advance America business on Peters Creek Parkway, did you tell him that he was on videotape in either one of those?

A. I don't remember; it is very possible though. I can't sit up here and tell you for sure, but I will tell you it's very possible I did tell him that.

Q. And if you did tell him that, that wouldn't have been the truth, would it?

A. No, sir, it wouldn't have been true.

Q. Do you often lie to the people you are interrogating?

[Prosecutor]: Objection.

THE COURT: Sustained.

[Defense Attorney]: That's all.

[Prosecutor]: In fact, you had him on video for some other robberies, did you not, Detective Beasley?

[Defense Attorney]: Objection.

THE COURT: Well, you opened the door.

[Defense Attorney]: Your Honor, I did not—

[Prosecutor]: You called—excuse me.

THE COURT: That's what I cautioned you about when you were up here.

[Defense Attorney]: Specific question was with respect to these two that he is charged with and being tried for today.

THE COURT: Step back up here. I cautioned you about it while you were up here. (Counsel approach the bench; discussions were off the record.)

THE COURT: Anybody got any more questions or you want to leave it right where it is?

[Prosecutor]: I think I'll leave it right where it is, Judge.

We agree with defendant that "[a]ny party is entitled as a matter of law to a ruling on an objection." *State v. Alford*, 339 N.C. 562, 572, 453 S.E.2d 512, 517 (1995). Defendant further asserts that failing to rule on an objection is tantamount to overruling the objection. *Id.* at 572, 453 S.E.2d at 517. Defendant argues the trial court allowed prejudicial information into evidence in violation of Rule 404(b). We note that the asking of the question is not itself evidence. We further note that defendant failed to ask the trial court for a limiting instruction at the time the questions were asked.

The State, on the other hand, argues that it was defendant's duty to obtain a ruling if he wanted to preserve this issue for appeal. *See* N.C. R. App. P. 10(b)(1) (1999); and *State v. Eason*, 328 N.C. 409, 420, 402 S.E.2d 809, 814 (1991). While this is a correct statement, we also recognize that defendant cannot prevail on this assignment of error even if we consider it on the merits.

To prevail, defendant must show that this error was prejudicial; put another way, defendant must show " 'there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.' " *State v. Gardner*, 316 N.C. 605, 613, 342 S.E.2d 872, 877 (1986) (quoting N.C. Gen. Stat. § 15A-1443(a) (1983)). The State maintains that defendant's guilt was well established by this point in the trial, based almost entirely on eyewitness testimony from Ms. Qayd, Ms. Vantorre, Officer Rose, and Detective Beasley. We agree.

We are unpersuaded by defendant's argument that the evidence regarding videotape of defendant committing prior robberies was too prejudicial to be admitted. "Such highly probative evidence necessarily is prejudicial to the defendant—otherwise it would not have such great probative value." *State v. Mercer*, 317 N.C. 87, 95, 343 S.E.2d 885, 890 (1986). The State correctly points out that the test is whether

"[the evidence's] probative value is substantially outweighed by the danger of unfair prejudice." N.C. Gen. Stat. § 8C-1, Rule 403 (1999). This determination is in the sound discretion of the trial court. *State v. Mason*, 315 N.C. 724, 731, 340 S.E.2d 430, 435 (1986). After careful review of the record below, we conclude the evidence was properly admitted because defendant "opened the door," and the State was permitted to rehabilitate Detective Beasley, who was attacked by defense counsel. After careful review of the entire record, we conclude that this assignment of error is without merit, and is overruled.

Defendant's conviction for robbery with a dangerous weapon is hereby vacated, and his case is remanded to the trial court for resentencing on the lesser included offense of common law robbery.

Vacated and remanded for resentencing.

Judges WYNN and BRYANT concur.