STATE OF NORTH CAROLINA v. MONTREZ DEMARIO CARTER

No. COA05-1214

(Filed 16 May 2006)

**1. Robbery— conspiracy—real gun—evidence sufficient**

The trial court did not err by denying defendant's motion to dismiss a charge of conspiracy to commit robbery with a dangerous weapon where the evidence was conflicting but sufficient to find that the gun was indeed real and operable.

**2. Robbery— conspiracy—instructions—gun possibly not real—instructions on common law robbery required**

When there is evidence suggesting that the weapon used in a robbery was inoperable or not real, the jury must be instructed on common law robbery, or as here, conspiracy to commit common law robbery. The trial court erred by not doing so.

Judge TYSON concurring in part, dissenting in part.

Appeal by defendant from judgment entered 25 August 2004 by Judge Kenneth C. Titus in Durham County Superior Court. Heard in the Court of Appeals 12 April 2006.

STATE v. CARTER

[177 N.C. App. 539 (2006)]

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Robert R. Gelblum, for the State.*

*George E. Kelly, III, for defendant-appellant.*

JACKSON, Judge.

On the morning of 8 September 2003, LeAnn Oakley ("Oakley") approached Montrez Carter ("defendant"), Willie Collins ("Collins"), and another man on the corner of Club Boulevard in Durham, North Carolina. Oakley attempted to purchase drugs from the men, but was refused based on the fact that she owed defendant money for drugs he previously had sold to her. Oakley testified that defendant and Collins suggested that Oakley have sex with the men in exchange for the drugs, and that when she refused, the men suggested she commit a robbery. Oakley agreed to commit the robbery, and the men got into her car where they drove to the R&W convenience store. On defendant's instructions, Oakley went into the store to see who was working and how many people were inside. When she returned to the car, defendant instructed her to move her car to a spot in the parking lot where it would not be visible from inside the store. Oakley did as instructed, and was then handed a gun by one of the men and told to rob the store. Oakley entered the convenience store, pointed the gun at the store owner, and demanded money which she received.

Oakley, who was arrested shortly thereafter, was identified by the store owner as being the woman who robbed her at gunpoint. Oakley confessed to Detective Brian Kilgore that she approached defendant and two other men in hopes of purchasing drugs. The men suggested that she rob a convenience store in exchange for the drugs, which she agreed to do. The men then gave her a gun, which she used during the robbery.

On 15 December 2003, defendant was indicted for robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon. Following a jury trial, on 25 August 2004 defendant was found guilty of conspiracy to commit robbery with a dangerous weapon, and not guilty of both robbery with a dangerous weapon and common law robbery. Defendant was sentenced to a term of imprisonment of twenty-three to thirty-seven months. His sentence was suspended and he was placed on thirty-six months of supervised probation. Defendant now appeals his conviction.

**[1]** Defendant first contends the trial court erred in denying his motion to dismiss the charge of conspiracy to commit robbery with a dangerous weapon based on insufficiency of the evidence to support the charge.

In order to survive a motion to dismiss, the State must offer "substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996). "Substantial evidence" is that which "a reasonable mind might accept as adequate to support a conclusion." *Id.* The trial court does not weigh the evidence before it; instead it is to consider the sufficiency of the evidence to support the offenses charged, and leave the determination of a witness' credibility to the jury to decide. *Id.* All contradictions and discrepancies in the evidence should be resolved in favor of the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence. *Id.* at 73, 472 S.E.2d at 926. When the trial court has found substantial evidence " 'to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied.' " *State v. Golphin*, 352 N.C. 364, 458, 533 S.E.2d 168, 229 (2000) (quoting *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988)), *cert. denied*, 532 U.S. 931, 149 L. Ed. 2d 305 (2001).

Defendant was charged with conspiracy to commit robbery with a dangerous weapon. Our Supreme Court has held that

A criminal conspiracy is an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way or by unlawful means. To constitute a conspiracy it is not necessary that the parties should have come together and agreed in express terms to unite for a common object: A mutual, implied understanding is sufficient, so far as the combination or conspiracy is concerned, to constitute the offense.

*State v. Bindyke*, 288 N.C. 608, 615-16, 220 S.E.2d 521, 526 (1975) (internal quotations and citations omitted). Thus, it was not necessary for all of the parties to the conspiracy to agree expressly to the use of a dangerous weapon prior to the robbery in order for a charge of conspiracy to commit robbery with a dangerous weapon to be submitted to the jury. *State v. Johnson*, 164 N.C. App. 1, 17, 595 S.E.2d 176, 185, *appeal dismissed and disc. review denied*, 359 N.C. 194, 607 S.E.2d 658 (2004); *see also State v. Goldberg*, 261 N.C. 181, 202, 134 S.E.2d 334, 348 (1964) ("It is not essential that each conspirator

have knowledge of the details of the conspiracy or of the exact part to be performed by the other conspirators in execution thereof; nor is it necessary that the details be completely worked out in advance to bring a given act within the scope of the general plan."), *overruled on other grounds by News and Observer v. State ex rel. Starling,* 312 N.C. 276, 283, 322 S.E.2d 133, 138 (1984). Rather, there need only be evidence that defendant and the other parties "had a mutual, implied understanding to commit robbery with a dangerous weapon." *Johnson,* 164 N.C. App. at 17, 595 S.E.2d at 186.

When conflicting evidence and an uncertainty exist as to whether the weapon used during a robbery was in fact a real or functional gun, the nature of the weapon is an issue that should be left for the jury to determine. *State v. Allen,* 317 N.C. 119, 125-26, 343 S.E.2d 893, 897 (1986); *see also State v. Thompson,* 297 N.C. 285, 289, 254 S.E.2d 526, 528 (1979); *State v. Frazier,* 150 N.C. App. 416, 419, 562 S.E.2d 910, 913 (2002). Our courts have held that when the evidence tends to suggest that a weapon used during a robbery was inoperable or fake, the jury must be given an instruction on common law robbery, in addition to the instruction on robbery with a dangerous weapon. *See State v. Joyner,* 312 N.C. 779, 324 S.E.2d 841 (1985); *Frazier,* 150 N.C. App. 416, 562 S.E.2d 910; *State v. Fleming,* 148 N.C. App. 16, 557 S.E.2d 560 (2001).

In the instant case, the State presented evidence that defendant entered into an agreement with Collins, Oakley, and another individual, pursuant to which Oakley would use a gun provided to her by the three men to rob a convenience store. Oakley testified that defendant and the other men told her to rob the store in exchange for drugs, which she agreed to do. They then provided her with a gun, and she in turn committed the robbery. Oakley stated that she spoke primarily with defendant during the discussion regarding the robbery. She testified that one of the men told her that the gun was not real, but that she was uncertain whether or not it was fake. Detective Kilgore testified concerning statements Oakley made immediately after her arrest, in which she identified defendant as one of the individuals from whom she attempted to purchase drugs, and who suggested she commit a robbery in exchange for the drugs. In one of Oakley's statements to the police, she stated that defendant and the others had two guns, one real and one fake, and that she believed she had been given the fake one.

Based on the evidence presented at defendant's trial, there was sufficient evidence to suggest that defendant entered into an agree-

ment with Oakley in which she would use a gun given to her by defendant and the others to commit a robbery. As there was conflicting evidence regarding whether the gun given to Oakley was real or not, there was sufficient evidence to find that the gun given to her was indeed a real and operable weapon. Thus, the trial court did not err in denying defendant's motion to dismiss the charge of conspiracy to commit robbery with a dangerous weapon.

[2] Defendant next contends the trial court committed plain error by failing to instruct the jury on the offense of conspiracy to commit common law robbery. The trial court's charge to the jury included instructions on conspiracy to commit robbery with a dangerous weapon, robbery with a dangerous weapon, and common law robbery.

At trial, defendant failed to object to the trial court's instructions to the jury, therefore we review defendant's assignment of error to determine whether the trial court committed plain error. *See* N.C. R. App. P. 10(b)(1), 10(c)(4) (2005); *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983). In order for this Court to find that the trial court's failure to instruct the jury on the offense of conspiracy to commit common law robbery amounts to plain error, " 'defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result.' " *State v. Haselden*, 357 N.C. 1, 13, 577 S.E.2d 594, 602 (2003) (quoting *State v. Roseboro*, 351 N.C. 536, 553, 528 S.E.2d 1, 12, *cert. denied*, 531 U.S. 1019, 148 L. Ed. 2d 498 (2000)), *cert. denied*, 540 U.S. 988, 157 L. Ed. 2d 382 (2003).

As stated previously, when the evidence presented at trial suggests that the weapon used during a robbery, or in this case as a central piece of the conspiracy, is inoperable or fake, the jury must be instructed on the offense of common law robbery. In the instant case, the trial court properly instructed the jury on the offenses of robbery with a dangerous weapon and common law robbery, apparently based on the conflicting evidence regarding whether the gun used was real or fake. The same conflicting evidence directly pertained to defendant's charge of conspiracy to commit robbery with a dangerous weapon, in that the evidence regarding the agreement between defendant, Oakley, and the other parties to the conspiracy also was conflicting as to whether or not the gun Oakley was to use was in fact real. Thus, we hold the trial court erred in failing to instruct the jury on the offense of conspiracy to commit common law robbery, and in doing so the trial court improperly limited the jury's consideration of

the offenses which defendant could be found guilty of. Defendant's conviction is therefore reversed and the case is remanded for a new trial.

New trial.

Judge TYSON concurs in part, dissents in part by separate opinion.

Judge GEER concurs.

TYSON, Judge, concurring in part, dissenting in part.

I concur in that portion of the majority's opinion which holds "the trial court did not err in denying defendant's motion to dismiss the charge of conspiracy to commit robbery with a dangerous weapon." I respectfully dissent from that portion of the majority's opinion which holds the trial court committed plain error in failing to instruct the jury on the offense of conspiracy to commit common law robbery, and the award of a new trial to defendant under plain error review.

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982)).

In *State v. Gallimore*, our Supreme Court defined conspiracy as follows:

> A conspiracy is the unlawful concurrence of two or more persons in a wicked scheme—the combination or agreement to do an unlawful thing or to do a lawful thing in an unlawful way by unlawful means. A conspiracy to commit a felony is a felony. *The*

*crime is complete when the agreement is made.* Many jurisdictions follow the rule that one overt act must be committed before the conspiracy becomes criminal. *Our rule does not require an overt act.*

272 N.C. 528, 532, 158 S.E.2d 505, 508 (1968) (emphasis supplied). The crime of conspiracy merely requires an agreement between two or more persons to engage in an unlawful act. *Id.* Whether or not the agreed upon offense was actually perpetrated is irrelevant to a determination of whether a conspiracy occurred. *Id.*

Here, the State presented sufficient evidence from which the jury could have found that defendant engaged in an agreement with Oakley and Collins to commit a robbery with a dangerous weapon. Oakley testified that she was not sure whether the gun she used in the robbery was real. Oakley gave a statement to police in which she stated, "I went in because they said either I go in with the fake gun, because they had a—they had a fake gun and a real one, or they want sex. So either I go in or give them sex." The agreement between Oakley, Collins, and defendant involved the use of a weapon to accomplish the robbery. The only conflicting evidence is whether the gun Oakley used in the robbery was real or "fake."

Wilma Allen ("Allen"), the store owner, whom Oakley robbed at gunpoint, was asked, "Is there any doubt in your mind that that gun was a fake gun?" Allen responded, "Huh-uh. It looked real to me." She later testified, "There was no doubt; it was real to me." Allen also testified that she knew the difference between a revolver and a semiautomatic weapon, and that the gun used by Oakley appeared to be a revolver. Police did not recover a fake gun from any of the conspirators. Both of defendant's co-conspirators pled guilty to conspiracy to commit robbery with a dangerous weapon.

Evidence was presented which tended to show a real gun was used in the robbery. Defendant has failed to show that the trial court's failure to give an instruction on conspiracy to commit common law robbery had a "probable impact on the jury's finding that the defendant was guilty" of conspiracy to commit armed robbery to warrant a new trial under plain error review. *Odom*, 307 N.C. at 660, 300 S.E.2d at 378.

The conspiracy was complete when the agreement to commit a robbery with a dangerous weapon was made. *Gallimore*, 272 N.C. at 532, 158 S.E.2d at 508. The trial court did not commit plain error

in failing *ex mero moto* to instruct the jury on conspiracy to commit common law robbery to entitle defendant to a new trial. I respectfully dissent.