An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-30

Filed: 1 September 2015

Mecklenburg County, No. 13 CRS 240649

STATE OF NORTH CAROLINA,

v.

ASIA NICOLE MANN, Defendant.

Appeal by defendant from Judgment entered 21 July 2014 by Judge Eric L. Levinson in Mecklenburg County Superior Court. Heard in the Court of Appeals 12 August 2015.

> *Attorney General Roy Cooper, by Assistant Attorney General M. Shawn Maier, for the State,*
>
> *PARISH & COOKE, by James R. Parish, for defendant.*

ELMORE, Judge.

On 21 July 2014, a jury found Asia Nicole Mann (defendant) guilty of robbery with a firearm or other dangerous weapon. Defendant was sentenced to 38 to 58 months' confinement with the Department of Corrections. Defendant gave notice of appeal in open court. After careful consideration, we hold that defendant received a trial free from error.

## I. Background

The evidence of the State tended to show the following: William Smith[1] (the victim) was a member of a group that bought, sold, and traded sneakers as a hobby. In October 2013, the victim arranged to sell defendant a pair of shoes for the price of eighty dollars in cash. Defendant asked the victim to come to her house to complete the sale because she did not have a mode of transportation to meet the victim. On 7 October 2013, the victim's grandmother drove the victim, along with the grandmother's friend and the victim's younger brother, to defendant's home around 9 p.m. The victim was fourteen years old at the time and defendant was seventeen years old.

The victim met defendant on the front porch of her residence, and when the victim showed the shoes to defendant, defendant offered to pay the lesser amount of sixty dollars due to a scratch on the shoes. The victim and defendant ultimately agreed that the victim would accept sixty dollars for the shoes, ten dollars in gas money for driving to defendant's house, and the opportunity to purchase a pair of shoes from defendant at a discounted price two weeks later. Defendant entered the house and then returned to the porch, handing the victim ten dollars in cash. Defendant displayed a silver gun and directed the victim to return to his car before she "started shooting at the car and at the tires."

---

[1] We employ this pseudonym to protect the confidentiality of the juvenile in this case.

The victim returned to his grandmother's car and instructed her to "get out of the street." The victim called 911 to report the incident, and the victim met the police at a Subway restaurant across the street less than thirty minutes later. Officers Tangela Johnson and Tim Abramo of the Charlotte Mecklenburg Police Department responded to the call. After meeting the victim at the Subway restaurant, the officers traveled to the residence where the victim stated the incident occurred. A woman answered their knock on the door, and the officers informed her of the reason for their visit. The woman called defendant, her daughter, to come to the door, and the officers informed defendant what they had been told by the victim. Defendant admitted that the victim came to her house to sell a pair of shoes and that they haggled over the price, but she decided she did not want the shoes. Defendant denied owning a gun. With the consent of defendant's mother and defendant, the officers searched defendant's bedroom. Inside a dresser drawer in defendant's bedroom, Officer Johnson found a silver handgun, a bullet, and a magazine with the gun. Officer Abramo found a pair of sneakers in defendant's closet, subsequently identified by the victim as the pair of shoes he had shown defendant. The police returned the shoes to the victim later that night.

At the close of the State's evidence, the court denied defendant's motion to dismiss. Defendant elected not to testify or to present evidence, and the court denied defendant's motion to dismiss at the close of all the evidence. The jury found

defendant guilty of robbery with a firearm or other dangerous weapon, and defendant was sentenced to 38 to 58 months' confinement with the Department of Corrections.

## II. Analysis

A. Motion to Dismiss

Defendant argues that the trial court erred in denying her motion to dismiss based on insufficiency of the evidence because "the State failed to produce substantial evidence that the personal property in this case, the tennis shoes, were taken by the use or threatened use of a firearm." Defendant's argument is twofold: (1) "[t]he evidence tends to show [the victim] voluntarily gave the shoes to [defendant] without there being any display or threats with the use of the firearm[;]" and (2) "there was no evidence the object used was in fact a real firearm." Defendant bases her second argument on Officer Johnson's testimony indicating that when she initially found the gun in defendant's bedroom, Officer Johnson did not think the gun was real because it weighed less than her service weapon and it appeared to be made of plastic. We disagree.

"The standard of review on appeal of the denial of a criminal defendant's motion to dismiss for insufficient evidence is whether the State has offered substantial evidence to show the defendant committed each element required to be convicted of the crime charged." *State v. Jackson*, 189 N.C. App. 747, 753, 659 S.E.2d 73, 77 (2008) (citation omitted). "Substantial evidence is that which a reasonable

juror would consider sufficient to support the conclusion that each essential element of the crime exists." *State v. Owen*, 159 N.C. App. 204, 206, 582 S.E.2d 689, 690 (2003) (citation and quotation marks omitted). "The court must consider the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference from that evidence." *State v. Wilson*, 158 N.C. App. 235, 238, 580 S.E.2d 386, 389 (2003) (citation and quotation marks omitted). Furthermore, "[e]vidence may be direct, circumstantial, or both." *Id.*

N.C. Gen. Stat. § 14-87 defines robbery with a firearm or other dangerous weapon as,

> (a) Any person or persons who, having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another or from any place of business, residence or banking institution or any other place where there is a person or persons in attendance, at any time, either day or night, or who aids or abets any such person or persons in the commission of such crime, shall be guilty of a Class D felony.

N.C. Gen. Stat. § 14-87(a) (2013). Our Courts have construed this statute to require three elements: "(1) the unlawful taking or attempted taking of personal property from another; (2) the possession, use or threatened use of firearms or other dangerous weapon, implement or means; and (3) danger or threat to the life of the victim." *State v. Hall*, 194 N.C. App. 42, 52, 669 S.E.2d 30, 37 (2008) (citation omitted).

*1. Use of the Firearm*

Defendant first argues that the evidence was insufficient to establish a taking was effectuated by the use or threatened use of a firearm because the evidence showed a taking prior to the display or threatened use of the firearm. This argument is without merit.

"Robbery with a dangerous weapon requires that the defendant's use or threatened use of a dangerous weapon must precede or be concomitant with the taking, or be so joined with it in a continuous transaction by time and circumstances as to be inseparable." *State v. Bellamy*, 159 N.C. App. 143, 148–49, 582 S.E.2d 663, 667–68 (2003) (citation omitted). "[T]he exact time relationship, in armed robbery cases, between the violence and the actual taking is unimportant as long as there is one continuing transaction." *Id.* at 149, 582 S.E.2d at 668 (citation omitted). "For purposes of robbery, however, the taking is not over until after the thief succeeds in removing the stolen property from the victim's possession." *Id.*

In *State v. Bellamy*, the defendant took two videotapes from a video store without paying and then fled the store. *Id.* at 145, 582 S.E.2d at 665. An employee chased the defendant for approximately twenty feet, then the defendant "turned around waving a pocketknife and asked, 'You want a piece of this?' " *Id.* The defendant argued that he threatened the employee with a knife after he had already taken the videotapes, and thus, it was not part of a single transaction. This Court, however, upheld the defendant's conviction, stating: "Defendant's brandishing of a

weapon . . . was necessary to complete the taking of the videos by thwarting [the employee's] attempt to retain lawful possession of them." *Id.* at 149, 582 S.E.2d at 668.

Here, the evidence viewed in the light most favorable to the State is sufficient to permit a jury to find that defendant used or threatened to use the gun to complete the taking of the shoes and to deprive the victim of them permanently. After the victim showed defendant the shoes, defendant entered the house and returned with a gun. Defendant displayed the gun and threatened to fire the gun at the victim's grandmother's car, thereby causing the victim to depart without the shoes or full payment. Thus, as in *Bellamy*, defendant's brandishing of a weapon was necessary to complete the taking. This evidence supports a reasonable finding that defendant's use of the gun was so joined with the taking that it constituted one continuous transaction.

### 2. Nature of the Firearm

Defendant next argues that the evidence was insufficient to show that the object displayed by defendant was actually a firearm capable of endangering or threatening a person's life. Defendant submits, "there was no evidence the object used was in fact a real firearm." We disagree.

This Court has previously stated, "Whether an instrument can be considered a dangerous weapon depends upon the nature of the instrument, the manner in which

defendant used it or threatened to use it, and in some cases the victim's perception of the instrument and its use." *State v. Ford*, 194 N.C. App. 468, 473, 669 S.E.2d 832, 836 (2008).

To support her argument, defendant quotes our Supreme Court: "If *all* the evidence shows the instrument could not have been a firearm or other dangerous weapon capable of threatening or endangering the life of the victim, the armed robbery charge should not be submitted to the jury." *State v. Allen*, 317 N.C. 119, 124–25, 343 S.E.2d 893, 897 (1986) (emphasis added).

Here, however, there is an abundance of evidence indicating the instrument was in fact a firearm. The victim testified that defendant displayed a silver gun to him and threatened to fire it at his grandmother's car. Officer Johnson found a silver handgun in defendant's dresser drawer, along with a loose bullet and a magazine. Officer Abramo testified that the gun has an internal firing pin, a metal piece at the end of the barrel which allows a cartridge to slide into the barrel, and a serial number. He testified that he had never encountered such features in a fake gun, based on his training and experience dealing with fake guns. Moreover, when a detective asked defendant if she had a weapon, she stated that she had a nine-millimeter handgun that she believed to be real. This evidence, viewed in the light most favorable to the State, was sufficient to take the charge to the jury. Accordingly, the trial court did

not err in denying defendant's motion to dismiss based on insufficiency of the evidence.

B. Jury Instructions

Defendant lastly contends that the trial court committed plain error in instructing the jury as to the sixth element of the robbery with a firearm or other dangerous weapon charge. Defendant maintains that "[t]he jury should have been instructed that they could, but were not required to, infer from the instrument's appearance to the victim that it was a firearm or other dangerous weapon." We disagree.

After the trial judge concluded the jury instructions, he asked defendant's counsel if he had any objections to the instructions, to which defendant's counsel replied, "No, sir." "A party may not make any portion of the jury charge or omission therefrom the basis of an issue presented on appeal unless the party objects thereto before the jury retires[.]" N.C.R. App. P. 10(a)(2) (2009). However, our rules provide,

> In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.

N.C.R. App. P. 10(a)(4); *see also State v. Goss*, 361 N.C. 610, 622, 651 S.E.2d 867, 875 (2007).

Our Supreme Court "has elected to review unpreserved issues for plain error when they involve either (1) errors in the judge's instructions to the jury, or (2) rulings on the admissibility of evidence." *State v. Gregory*, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996) (citation omitted). Plain error arises when the error is "so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]" *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation and quotation marks omitted). "For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012). Moreover, "[t]o show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *Id.*

Here, the trial judge instructed the jury as follows:

> For you to find the defendant guilty of this offense, the [S]tate must prove seven things beyond a reasonable doubt: . . . sixth, that the defendant had a firearm in her possession at the time she obtained the property or that it reasonably appeared to [the victim] that a firearm was used, in which case you may infer that the said instrument was what the defendant's conduct represented it to be[.]

Significantly, the trial court's jury instruction mirrored the North Carolina Pattern Jury Instruction for robbery with a firearm. *See* N.C.P.I.—Crim. 217.20 (Replacement May 2003) ("Sixth, that the defendant had a firearm in his possession at the time he obtained the property (or that it reasonably appeared to the victim that

a firearm was being used, in which case you may infer that the said instrument was what the defendant's conduct represented it to be).")."'Pattern' jury instructions have existed for years, compiled as trial court judges individually developed effective, appeals-tested instructions and informally shared them with each other." *State v. Walston*, 367 N.C. 721, 730, 766 S.E.2d 312, 318 (2014) (citing 1 N.C.P.I.—Crim. Intro. 3–4 (2014)). Although "the pattern instructions have neither the force nor the effect of law, . . . we have often approved of jury instructions that are consistent with the pattern instructions[.]" *Id.* at 731, 766 S.E.2d at 318–19 (citation and quotation marks omitted). Moreover, our Supreme Court has repeatedly stated, "the word 'may' will ordinarily be construed as permissive and not mandatory." *State v. Peek*, 313 N.C. 266, 271, 328 S.E.2d 249, 253 (1985) (citing *Felton v. Felton*, 213 N.C. 194, 198, 195 S.E. 533, 536 (1938)).

In *State v. Wilburn*, No. COA03-1347, 2004 WL 1191789 (N.C. Ct. App. June 1, 2004) and *State v. More*, No. COA14-139, 2014 WL 4977653 (N.C. Ct. App. Oct. 7, 2014),[2] this Court was presented with identical arguments from defendants also appealing convictions of robbery with a dangerous weapon. In *Wilburn*, this Court held that the trial court's "use of permissive language—i.e., the jury 'may infer' that the object was a firearm—properly denoted that the jury was permitted, but not required, to find defendant possessed a firearm . . . during the robbery." *Wilburn*,

---

[2] We acknowledge that these unpublished cases are not controlling legal authority, however, the analysis is relevant to this appeal.

2004 WL 1191789, at *4. In *More*, the trial court rejected the defendant's request to include "but are not required to do so" after "may infer" in element six of its jury instructions. *More*, 2014 WL 4977653, at *1. Instead, the trial court instructed the jury that it "*may infer* that the said instrument was what the Defendant's conduct represented it to be." *Id.* at *2. This Court rejected the defendant's argument that the sole use of "may . . . could connote a mandatory, rather than permissive, inference[.]" *Id.* On the contrary, we concluded that the instruction properly allowed the jury to make a permissive inference regarding the dangerous weapon. *Id.*

Defendant relies on our Supreme Court's holding in *State v. Allen* to support her argument. She incorrectly argues in her brief that "[a]s in *State v. Allen*, if the jury had believed it was a toy pistol the jury nevertheless would have been compelled to convict the defendant of armed robbery because [the victim] testified it appeared to be a firearm." In *Allen*, our Supreme Court concluded that the trial court's instruction amounted to a mandatory presumption when the State was entitled only to a permissive inference. *State v. Allen*, 317 N.C. 119, 126, 343 S.E.2d 893, 898 (1986). The trial court's instruction read, "an instrument which appears to be a weapon capable of inflicting a life-threatening injury is in law a dangerous weapon[.]" *Id.* at 126, 343 S.E.2d at 897–98. Our Supreme Court stated that it was "for the jury to determine the nature of the weapon." *Id.* at 125–26, 343 S.E.2d at 897. Moreover, only when "evidence shows conclusively that the weapon was not what it appeared to

be, then the jury should not be permitted to find that it was what it appeared to be." *Id.* at 125, 343 S.E.2d at 897.

Here, unlike in *Allen*, the trial court properly instructed the jury that it *may* infer that the instrument was what defendant's conduct represented it to be. The trial court did not conclusively state that the gun was, in law, a dangerous weapon. Rather, here the trial court permitted the jury to draw such an inference, which it did. Additionally, overwhelming evidence indicating that the gun was real and not a toy was presented to submit the issue to the jury: the victim, defendant, and Officer Abramo believed the gun to be real; the gun was found in a drawer along with a bullet and magazine; and the gun has a serial number, firing pin, and metal components, all of which are inconsistent with characteristics of a fake weapon. As such, the trial court did not commit plain error in instructing the jury as to the sixth element of the robbery with a firearm or other dangerous weapon charge.

### III. Conclusion

In sum, the trial court did not err by denying defendant's motion to dismiss based on insufficiency of the evidence or by instructing the jury as to element six of the robbery with a firearm or other dangerous weapon charge.

NO ERROR.

Judges CALABRIA and DILLON concur.

Report per Rule 30(e).